UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Frances Coombe,

        Plaintiff,

v.

Muse Management, Inc., and Conor
Kennedy,

          Defendants.

Case No: 1:23-cv-10994

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff, Mr. Frances Coombe, by and through his undersigned counsel, hereby brings this action against Muse Management, Inc. ["Muse"], and Mr. Conor Kennedy ["Kennedy"], alleging as follows:

**PRELIMINARY STATEMENT**

1.   This is a complaint for violation of the Civil Rights Act of 1964 ("Title VII"), anti-discrimination laws of New York State, N.Y. Exec. Law § 290, et seq. ("NYSHRL") and anti-discrimination laws of New York City, NYC Administrative Code § 8-101, et seq. ("NYCHRL"), New York Labor Law (NYLL) unlawful wage violations, monies owed and violation of notice requirements.

2.   Plaintiff worked at Defendant Muse Management, Inc. for twelve years as a successful fashion and runway model, beginning at age 18.[1]

3.   Plaintiff has worked as a model and has been featured as a runway model for high fashion brands on many occasions, including Marc Jacobs, Saint Laurent, MiuMiu, and Gucci.

---

[1] A record of Plaintiff's work may be viewed at https://perma.cc/JFZ6-X7ZW.

4.   Plaintiff has been featured in high fashion media, including Vogue, i-D, and Harper's Bazaar.

5.   Plaintiff notified Defendants of changes in gender identity and a desire to end modeling as a female and to return to modeling as a male model. Defendants refused to allow Plaintiff to do so.

6.   Shortly after complaining to Defendants regarding discriminatory treatment based on gender identity, Plaintiff was constructively terminated, having been forced to resign by the refusal to allow him to return to modeling as a male.

7.   Plaintiff was mischaracterized by Defendant Muse as an independent contractor for many years, up through March 30, 2023, resulting in Plaintiff's overpayment of tax, loss of required employee benefits, such as unemployment and workers compensation insurance benefits and health insurance benefits, and other benefits of employment.

8.   Defendants have failed and refuse to pay monies owed to Plaintiff for services rendered after demand therefor.

9.   The amount in controversy is in excess of $300,000.

**PARTIES**

10. Plaintiff is an individual who worked as a fashion model for Defendant Muse from 2011 until March 30, 2023.

11. Plaintiff is a citizen of the Dominion of Canada, and is resident in the United States pursuant to a lawful and valid visa.

12. Defendant Muse is a defunct Delaware corporation, forfeited in 2018 for failure to file with the state information required by law.

13. Upon information and belief, Muse has not filed any annual reports or paid any business entity franchise taxes from the time of forfeiture to the present.

14. Defendant Muse is a business enterprise that has been doing business in the State of New York during those times it was authorized by law to do so.

15. At all relevant times during which it was authorized by law to do so, Defendant Muse has affected commerce by engaging in the modeling industry on an interstate and international basis.

16. Defendant Muse employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

17. At all relevant times during which it was authorized to do so, Defendant Muse has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

18. At all relevant times during which it was authorized to do so, Defendant Muse has been an employer as that term is defined in N.Y. Exec. Law §292.5.

19. At all relevant times during which it was authorized to do so, Defendant Muse has continuously been a person, employer, and covered entity within the meaning of New York City Human Rights Law § 8-102.

20. Defendant Conor Kennedy is the CEO and, upon information and belief, sole shareholder of Defendant Muse, as well as sole Director, and he functioned as the President, Secretary and Treasurer of Muse.

21. Kennedy was first in command at Muse, and it was his job to run the administration of Muse, including dictating policies for the day-to-day governance of Muse.

22. Kennedy was responsible for all of the administrative oversight of Muse, including but not limited to all employees, contractors, vendors, and clients.

23. Kennedy had a public-facing role, which included making statements in public media and social media, on behalf of Muse.

24. Defendant Kennedy exercised sufficient control of Muse's day to day operations to be considered an employer of Plaintiffs.

25. Plaintiff's work was conducted under the supervision of Defendant Kennedy.

26. Defendant Kennedy had the power to effectuate termination of Plaintiff's work at Muse.

27. Defendant Kennedy had the power to set the terms and conditions of Plaintiff's work at Muse.

28. Under the name of Muse Management, Inc, Defendant Muse and Defendant Kennedy provided models, including Plaintiff, to its clients for high-fashion events and photo shoots in return for a percentage of their models' billings.

29. Defendant Kennedy's position, duties, functions, and roles, as set forth above, made him the agent and the alter ego of Muse, to the extent the corporation may have existed, now or in the past, and imposes liability upon him personally for the discrimination practiced upon the Plaintiff.

30. To the extent that the corporation does not exist, now or in the past, Defendant Kennedy meets the definition of an "employer" pursuant to Title VII.

**JURISDICTION AND VENUE**

31. This Court has subject matter jurisdiction over pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(2) and 28 U.S.C. § 1367.

32. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices giving rise to claims occurred within this District.

## PROCEDURAL HISTORY

33. On or about July 5, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging continuing action of discrimination on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964 by Defendant Muse.

34. On or about September 25, 2023, Plaintiff received a Notice of Right to Sue from the EEOC.

35. Plaintiff took all necessary steps to exhaust his administrative remedies.

36. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## FACTUAL ALLEGATIONS

37. Plaintiff, Frances Coombe, is a talented fashion model who had a successful career with Defendant Muse for twelve years, starting at age 18.

38. In the early years of Plaintiff's career, his modeling was directed to the female market, with a gender expression that was feminine.

39. In more recent years, Plaintiff's gender expression had become increasingly androgynous as expressed through hair, body styling and clothing.

40. On October 15, 2021, Plaintiff notified Defendants Muse and Kennedy of a change in his gender identity, expressed at that time as a non-binary identity.[2]

41. Kennedy thereafter told Plaintiff as follows:

---

[2] "Non-binary" is a term used to describe a person whose gender identity is not exclusively male or female. For example, some people have a gender identity that blends elements of being a man or a woman or a gender identity that is neither male nor female. NYC Commission on Human Rights, Legal Enforcement Guidance on Discrimination on the Basis of Gender Identity or Expression: Local Law No. 3 (2002) at Section II.

a. You're still on the women's board and clients will only look at you as a woman. In the modeling world non-binary does not exist, we will still pitch you to clients as a woman.

b. In modeling life, you will be 'she' and 'her' until you arrive on set, non-binary models are not sought after in the casting process. When you show up for a job you can tell them your pronouns then.

c. We'll be sending you to women's wear jobs and you have to separate your private life from your work life.

42. Plaintiff arranged with Defendants to take new digital photographs to rebrand as a model with non-binary gender expression on October 21, 2021.

43. The photographer from Defendants' Art Department insisted that Plaintiff wear women's clothing, i.e., a bikini, and refused to permit him to wear men's boxer briefs or men's shoes. These were sent to clients and placed on Muse's website to promote Plaintiff for future jobs. They perpetuated Plaintiff's positioning by Defendants as a model of feminine gender expression.

44. On January 22, 2022, Plaintiff hired his own photographer to take shots appropriate to the men's modeling board, and provided them to Kennedy, to Muse's Art Department and to another of Muse's agents.

45. Plaintiff provided further such photographs on February 13, 2022.

46. Plaintiff began taking exogenous testosterone hormones on or about February 11, 2022, and informed Kennedy of this, as well as that he identified with male pronouns (he, him and his).

47. Over time, Plaintiff's gender expression became increasingly masculine.

48. On May 27th 2022 Plaintiff noticed he had been removed from the Muse website completely without warning. These were not put back up until August 25, 2022.

49. On July 2, 2022, Plaintiff had an in-person meeting with Defendants regarding the subject of beginning to work as a male model.

50. Although Muse's male models includes many who are androgynous, and similar in appearance to Mr. Coombe's current appearance, this request was refused.

51. Mr. Coombe was told by top officers of Muse, including Mr. Kennedy, that he was insufficiently masculine.

52. Defendants Muse and Kennedy told others that Plaintiff needed to appear more masculine.

53. This imposed a restriction on Plaintiff's work based on gender stereotypes.

54. Defendants relented and set up a meeting with the agency representatives for the men's modeling board.

55. On July 7, 2022, Plaintiff met in person with two men's modeling board representatives.

56. Plaintiff was misgendered by one of the representatives as "she" and "girl," despite knowledge that Plaintiff's gender identity was male and not female.

57. Upon raising this issue, the representative made a statement suggesting that he would continue to refer to Plaintiff as a female: "I'm gay, so I call everyone she and girl."

58. This incorrect usage was continued, and appeared to be on purpose, which was, not surprisingly, upsetting to Plaintiff, especially since it was coming from another member of the LGBTQ community.

59. In an email sent July 14, 2022, Plaintiff inquired politely with one of the representatives as to the progress regarding modeling on the men's board. Plaintiff also noted that Muse had Plaintiff's images with a male gender expression that it could use on the men's board.

60. The representative responded by email, criticizing Plaintiff's request to appear on the men's modeling board, stating "I need the right images of you. I will not just put anything up on the site."

61. In fact, Muse had appropriate images for the men's board, because Plaintiff had provided such photographs on or about January 22, 2022 and February 13, 2022. In the photos, Plaintiff's hair was short, and he utilized a chest binder.

62. On July 14, 2022, when Plaintiff was at a gallery show in the Chelsea neighborhood of Manhattan, Defendant Kennedy called to complain about Plaintiff's polite email to the men's board representative.

63. Kennedy said "You can't talk to [him] like that, he is a senior agent. You can't expect us to put you on the website right away, because you have no pictures."

64. Kennedy continued, stating "These things take time, those images aren't right, [he] is a senior agent and he knows best. If he feels the pictures aren't good enough, then he won't put you on the site."

65. Mr. Kennedy's words conveyed that he considered Plaintiff's masculinity to be insufficiently masculine.

66. During the conversation, Kennedy said flatly "you need to apologize to [him]," despite the fact that Plaintiff had been polite, and Defendants' representative had been aggressive in response to Plaintiff's request regarding men's modeling.

67. Because of Kennedy's continued statements implying that Plaintiff is insufficiently masculine, Plaintiff became upset at the disrespect to his gender identity and wept on the phone. Defendant Kennedy was unsympathetic.

68. In response to this email, Plaintiff replied that he requested to be referred to and listed as a male beginning on June 17th 2022.

69. He received no reply to this email.

70. Plaintiff made oral and written complaints to Muse and Kennedy regarding the discriminatory treatment.

71. In response, one of the representatives said: "Don't you ever address me like this. You got me all wrong. You can go find another agency where you can speak disrespectful to."

72. Plaintiff made oral complaints to Muse and Kennedy that he was being treated inappropriately because of asserting his male gender identity.

73. Shortly after these complaints, Muse and Kennedy ceased promoting Plaintiff, causing a rapid decline in his work opportunities and income.

74. Muse employees and Kennedy made statements and took actions suggesting that the reason for this was Plaintiff's change to his gender identity.

75. Plaintiff submitted a written complaint to Muse and Kennedy on March 28, 2023.

76. The complaint stated that, despite being listed as male, the previously discussed discriminatory attitudes and differential treatment because of his gender identity persisted, adversely affecting his work opportunities, and leading him to resign.

77. Instead of taking prompt and effective action to address the Plaintiff's complaint of gender-based discrimination, Defendants accepted Plaintiff's resignation.

78. Plaintiff is currently working as a male model at We Speak Model Management, a highly regarded modeling agency in New York City, and which partners with the prestigious Parsons School of Design in New York City to provide models across all fashion design courses.

## MISCLASSIFICATION AS INDEPENDENT CONTRACTOR

79. Throughout his tenure with Defendants Muse and Kennedy, Plaintiff was misclassified as an independent contractor, despite the existence of a true employer-employee relationship.

80. The nature of his work, the control exercised by Muse and Kennedy, and the terms of his agreement demonstrate an employment relationship, as indicated by the facts set forth below.

81. There was a continuing relationship between Plaintiff and Muse since 2011.

82. There was a continuing relationship between Plaintiff and Kennedy since 2011.

83. Plaintiff was subject to the control and direction of Defendants and their clients regarding when, where, and how he performed his modeling work.

84. Plaintiff had no place of business or establishment from which he conducted business affairs, independent from Muse and Kennedy.

85. Defendants and their clients provided materials, tools, and premises necessary for Plaintiff's work.

86. Plaintiff was exclusively engaged by Defendants and required permission to work for other entities.

87. Plaintiff signed a power of attorney, coupled with an interest, to Muse at Muse's insistence, for his financial and contracting affairs.

88. According to the Bureau of Labor Statistics ("BLS"), the work does not require educational credentials.

89. According to BLS, the median hourly wage for this work in 2020 was $15.34.

90. Muse, Kennedy, and their clients had the right to control when and where Plaintiff did his job.

91. Defendants and their clients had the right to control Plaintiff's grooming and clothing during the time he was working.

92. Defendants were responsible for promoting Plaintiff to clients in all areas and formats of the fashion and entertainment industries.

93. Defendants were also responsible for obtaining work for Plaintiff.

94. Plaintiff was not permitted to work for others without permission of Defendants.

95. Defendants required their clients to furnish the materials used, such as clothes, makeup, and tools of the trade, such as photo equipment and lighting.

96. All of Plaintiff's work was performed on premises specified by Defendants as directed by Defendants' clients.

97. Defendants had the right to assign additional projects to Plaintiff.

98. Plaintiff was expected to work when Defendants told him to work.

99. Plaintiff did not hire or pay any assistants.

100.     Defendants had the right to discharge Plaintiff as set out in his agreement.

101.     Muse sponsored Plaintiff for visas in the H1B and O1B categories since 2011, as Plaintiff is a citizen of Dominion of Canada.

102.     Based on these facts, Plaintiff was a *de facto* employee, and not an independent contractor.

103.     In light of the employment relationship, Plaintiff is protected by laws applicable to employees, including without limitation Title VII, NYSHRL, and NYCHRL.

104.    Defendants deducted from Plaintiff's paychecks, fees, costs, and interest, including without limitation publicity and promotional costs, legal costs, service charge costs.

## CLAIMS FOR RELIEF

### COUNT 1
### Federal Civil Rights Act
### 42 U.S.C. § 2000e, et seq.
### Discrimination Motivated by Sex
### [Against all Defendants]

105.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

106.    Plaintiff is a member of a protected category with regard to sex.

107.    Plaintiff was targeted for harassment and subjected to a hostile work environment motivated by his sex, including gender identity.

108.    Defendants' discriminatory actions, including berating Plaintiff based on gender identity, imposing gender stereotypes, and terminating promotion of his modeling career motivated by gender identity, constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964.

109.    The hostile environment created inferior terms, conditions, or privileges of employment.

110.    Plaintiff reasonably perceived the working environment to be detrimental to his career based on gender identity.

111.    Defendants' actions violated the anti-discrimination provisions of Title VII, 42 U.S.C. § 2000e et seq.

112.    To the extent that Defendant Muse was an employer within the meaning of Title VII, it is liable for violations thereof.

113.     To the extent that Defendant Kennedy was an employer within the meaning of Title VII, he is liable for violations thereof.

114.     As a direct and proximate result of discriminatory conduct of Defendants Muse and Kennedy, motivated by gender identity, Plaintiff suffered emotional distress, financial loss, and damage to his career and reputation, and other pecuniary and non-pecuniary losses.

115.     Defendants Muse and Kennedy acted willfully or in reckless disregard for the rights of Plaintiff.

## COUNT 2
### New York State Human Rights Law
### N.Y. Exec. L. § 290, et seq.
### Actual Participation Liability
### and Aiding and Abetting Liability for
### Discrimination Motivated By Gender Identity
### [Against all Defendants]

116.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

117.     Defendants' discriminatory actions also constitute violations of the New York State anti-discrimination laws.

118.     Defendant Muse, through its principal and alter ego Conor Kennedy, also aided and abetted in the deprivation of Plaintiff's rights because of discrimination against him by actually participating in the conduct giving rise to his claim for discrimination.

119.     Defendant Kennedy also aided and abetted in the deprivation of Plaintiff's rights because of discrimination against him by actually participating in the conduct giving rise to his claim for discrimination.

120.     To the extent that Defendant Muse was an employer within the meaning of Title NYSHRL, it is liable for violations thereof.

121.     To the extent that Defendant Kennedy was an employer within the meaning of NYSHRL, he is liable for violations thereof.

122.     As a direct and proximate result of discriminatory conduct of Defendants Muse and Kennedy, motivated by gender identity, Plaintiff suffered emotional distress, financial loss, and damage to his career and reputation, and other pecuniary and non-pecuniary losses.

123.     Defendants Muse and Kennedy acted willfully or in reckless disregard for the rights of Plaintiff.

## COUNT 3
### New York City Human Rights Law
### NYC Admin. Code § 8-101, et seq.
### Actual Participation Liability
### and Aiding and Abetting Liability
### for Discrimination Motivated By Gender Identity
### [Against all Defendants]

124.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

125.     The effect of Defendants' acts complained of above was to deprive Plaintiff of equal employment opportunities as an employee because of sex and gender identity for his complaints of discrimination in violation of NYCHRL § 8-101, et seq.

126.     Plaintiff was treated less well than other employees on the basis of sex and gender identity.

127.     Defendant Muse, through its principal and alter ego Conor Kennedy, also aided and abetted in the deprivation of Plaintiff's rights because of discrimination against him by actually participating in the conduct giving rise to his claim for discrimination.

128.     Defendant Kennedy also aided and abetted in the deprivation of Plaintiff's rights because of discrimination against him by actually participating in the conduct giving rise to his claim for discrimination.

129.     To the extent that Defendant Muse was an employer within the meaning of NYCHRL, it is liable for violations thereof.

130.     To the extent that Defendant Kennedy was an employer within the meaning of NYCHRL, he is liable for violations thereof.

131.     As a direct and proximate result of discriminatory conduct of Defendants Muse and Kennedy, motivated by gender identity, Plaintiff suffered emotional distress, financial loss, and damage to his career and reputation, and other pecuniary and non-pecuniary losses.

132.     Defendants Muse and Kennedy acted willfully or in reckless disregard for the rights of Plaintiff.

## COUNT 4
### Federal Civil Rights Act ("Title VII")
### 42 U.S.C. § 2000e, et seq.
### Retaliation Because of Protected Activity
### [Against all Defendants]

133.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

134.     Plaintiff complained to Defendant Kennedy about these discriminatory conditions on several occasions.

135.     These complaints constituted protected activities.

136.     Defendants were aware of Plaintiff's protected activities when they took actions constructively terminating Plaintiff from employment in violation of Title VII of the Civil Rights Act of 1964.

137.     The actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a complaint of discrimination.

138.     Defendants' actions violated the anti-retaliation provisions of Title VII, 42 U.S.C. § 2000e et seq.

139.      To the extent that Defendant Muse was an employer within the meaning of Title VII, it is liable for violations thereof.

140.      To the extent that Defendant Kennedy was an employer within the meaning of Title VII, he is liable for violations thereof.

141.      As a direct and proximate result of the retaliatory conduct of Defendants Muse and Kennedy, because of prior protected activities of which they were aware at the time, Plaintiff suffered emotional distress, financial loss, and damage to his career and reputation, and other pecuniary and non-pecuniary losses.

142.      Defendants Muse and Kennedy acted willfully or in reckless disregard for the rights of Plaintiff.

**COUNT 5**
**New York State Human Rights Law**
**N.Y. Exec. L. § 290, et seq.**
**Actual Participation Liability**
**and Aiding and Abetting Liability for**
**Retaliation Motivated By Protected Activity**
**[Against all Defendants]**

143.      Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

144.      Defendants' actions, motivated by retaliation for prior protected activities of which they were aware at the time, including without limitation the complaints made by Plaintiff to Defendant Kennedy regarding Defendants' actions motivated by Plaintiff's gender identity, also constitute violations of the New York State anti-discrimination laws.

145.      Defendant Muse, through its principal and alter ego Conor Kennedy, also aided and abetted in the deprivation of Plaintiff's rights motivated by retaliation against him by actually participating in the conduct giving rise to his claim for discrimination.

146.     Defendant Kennedy also aided and abetted in the deprivation of Plaintiff's rights motivated by retaliation against him by actually participating in the conduct giving rise to his claim for discrimination.

147.     To the extent that Defendant Muse was an employer within the meaning of Title NYSHRL, it is liable for violations thereof.

148.     To the extent that Defendant Kennedy was an employer within the meaning of NYSHRL, he is liable for violations thereof.

149.     As a direct and proximate result of discriminatory conduct of Defendants Muse and Kennedy, motivated by retaliation, Plaintiff suffered emotional distress, financial loss, and damage to his career and reputation, and other pecuniary and non-pecuniary losses.

150.     Defendants Muse and Kennedy acted willfully or in reckless disregard for the rights of Plaintiff.

**COUNT 6**
**New York City Human Rights Law**
**NYC Admin. Code § 8-101, et seq.**
**Actual Participation Liability**
**and Aiding and Abetting Liability**
**for Retaliation Motivated By Protected Activity**
**[against all Defendants]**

151.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

152.     Defendants' actions, motivated by retaliation for prior protected activities of which they were aware at the time, including without limitation the complaints made by Plaintiff to Defendant Kennedy regarding Defendants' actions motivated by Plaintiff's gender identity, also constitute violations of the New York City anti-discrimination laws, N.Y.C. Admin. Code § 8-101, et seq.

153.     Defendant Muse, through its principal and alter ego Conor Kennedy, also aided and abetted in the deprivation of Plaintiff's rights motivated by retaliation against him by actually participating in the conduct giving rise to his claim for discrimination.

154.     Defendant Kennedy also aided and abetted in the deprivation of Plaintiff's rights motivated by retaliation against him by actually participating in the conduct giving rise to his claim for discrimination.

155.     To the extent that Defendant Muse was an employer within the meaning of NYCHRL, it is liable for violations thereof.

156.     To the extent that Defendant Kennedy was an employer within the meaning of NYCHRL, he is liable for violations thereof.

157.     As a direct and proximate result of discriminatory conduct of Defendants Muse and Kennedy, motivated by retaliation, Plaintiff suffered emotional distress, financial loss, and damage to his career and reputation, and other pecuniary and non-pecuniary losses.

158.     Defendants Muse and Kennedy acted willfully or in reckless disregard for the rights of Plaintiff.

## COUNT 7
## UNLAWFUL WAGE VIOLATIONS
### New York Labor Law
### [Against all Defendants]

159.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

160.     At all times relevant, Defendants have been employers and/or joint employers within the meaning of the NYLL.

161.     At all times relevant, Plaintiff was an employee and Defendants were employers within the meaning of NYLL §§ 190, 651(5), and 652.

162.     At all times relevant, the wage deduction provisions of NYLL § 193, and the supporting New York State Department of Labor Regulations, applied to Defendants and protected Plaintiff.

163.     Defendants have willfully, in bad faith, and/or intentionally reduced the wages of Plaintiff by making unlawful deductions from his wages.

164.     In addition, Defendants have required Plaintiff to incur expenses for Defendants' benefit without reimbursement. The required and unreimbursed expenses incurred by Plaintiff for the benefit of Defendants were unlawful deductions from the wages of Plaintiff in violation of NYLL Article 6, § 193.

165.     Plaintiff did not receive written notice, at any point, and/or prior to the execution of the initial authorization and/or prior to a deduction being made, of all terms and conditions of the above- described deductions, their benefit(s) to Plaintiff , and/or the details of the manner in which deduction(s) would be made, as required by NYLL § 191-D, or § 193 and its supporting regulations, 12 NYCRR § 195-4.2, to be an authorized deduction within the meaning of NYLL § 193.

166.     Defendants' deductions for costs, including without limitation publicity and promotional costs, legal costs, service charge costs, were not authorized by NYLL § 193 and/or its supporting New York State Department of Labor Regulations.

167.     Defendants' deductions were made for the purpose of paying Defendants' administrative costs, which is explicitly prohibited by NYLL § 193 and supporting New York State Department of Labor Regulations.

168.     Defendants willfully failed to pay Plaintiff all compensation owed him in a timely manner, in violation of NYLL § 191.

169.     Defendants' violations of NYLL § 193, as described herein, have been willful, intentional, and/or not in good faith.

170.     Defendants have not made a good faith effort to comply with NYLL § 193 with respect to Plaintiff and their non-compliance has been willful.

171.     Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants the deductions from his wages, liquidated damages, reasonable attorneys' fees and costs of the action, and other forms of relief as specified in the relief requested at the end of this Complaint.

**COUNT 8**
**UNPAID WAGES**
**New York Labor Law**
**[Against all Defendants]**

172.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

173.     Plaintiff is owed monies for work performed.

174.     Defendant Muse has not provided payment therefor.

175.     Defendants' deductions from Plaintiff's paychecks for fees and costs, including without limitation publicity and promotional costs, legal costs, service charge costs, were not authorized by NYLL § 193 and/or its supporting New York State Department of Labor Regulations.

176.     Muse withheld payment of these fees and costs from Plaintiff with the intent and effect of requiring Plaintiff to ask Muse for a "loan" in order to meet living expenses, on which Muse charged fees, costs and/or interest to which it was not entitled.

177.     As a direct and proximate result of the failure of Defendant Muse to pay these wages, and for its deduction of improper fees, costs and interest from Plaintiff's paychecks,

Defendant Muse is liable therefor, as well as reasonable attorney's fees, prejudgment interest, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due, and other damages as set forth in the relief requested at the end of this Complaint.

178.    Defendant Muse was aware that these amounts remained unpaid and acted willfully or in reckless disregard for the rights of Plaintiff.

## COUNT 9
### NEW YORK NOTICE VIOLATIONS
### New York Labor Law
### [Against All Defendants]

179.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

180.    Defendants did not provide Plaintiff with the notices required by NYLL § 191-D or § 195.

181.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663, and as a set forth in the relief requested at the end of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Frances Coombe respectfully requests that this Court enter judgment in his favor and against Defendants Muse and Kennedy, and grant the following relief:

A.    Compensatory damages, including back pay, front pay, and benefits, to fully compensate Plaintiff for his financial losses and emotional distress;

21

B.  Punitive damages to deter Defendants from engaging in similar discriminatory conduct;

C.  An order declaring that Plaintiff was an employee for purposes of Title VII, NYSHRL and NYCHRL, and not an independent contractor;

D.  An injunction preventing Defendants from engaging in any further discriminatory conduct based on gender identity or any other protected characteristic;

E.  An injunction preventing Defendants from engaging in any further illegal deductions from wages;

F.  Reasonable attorneys' fees and costs incurred in this action; and

G.  Such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 19, 2023

Respectfully submitted,

/s/ Jillian T. Weiss
Jillian T. Weiss
LAW OFFICE OF JILLIAN T. WEISS, PC
242 Main Street, No. 304
Beacon, New York 12508
Telephone: (845) 709-3237
Facsimile: (845) 684-0160
jweiss@jtweisslaw.com

*Attorney for Plaintiff*
*Frances Coombe*